2023 IL App (2d) 230077
No. 2-23-0077
Opinion filed December 26, 2023

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 21-CF-1484 |
| DIAMOND D. ANDERSON, | ) ) | Honorable David P. Kliment, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE McLAREN delivered the judgment of the court, with opinion.
Justices Jorgensen and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    In October 2021, defendant, Diamond D. Anderson, was charged by indictment with various offenses for allegedly battering the mother of his unborn child. Specifically, he was charged with (1) two counts of aggravated domestic battery (720 ILCS 5/12-3.3(a-5) (West 2020)), (2) two counts of aggravated battery (*id.* § 12-3.05(d)(2)), (3) two counts of domestic battery (*id.* § 12-3.2(a)(1), (2)), (4) two counts of violation of a domestic violence bail bond (*id.* § 32-10(b)), and (5) one count of criminal damage to property (*id.* § 21-1(a)(1)). Counsel was appointed to represent defendant. When defendant was arraigned, the trial court admonished him under Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) about his right to an attorney, the charges brought against him, and the penalties that could be imposed if he was convicted of these charges. Defendant assured the

court that he understood these admonishments. Twenty-six days later, defendant advised the court that he wanted to waive his right to counsel and proceed *pro se*. Before allowing defendant to do so, the court ascertained that defendant was literate and understood the ramifications of proceeding *pro se*. The court did not admonish defendant again pursuant to Rule 401(a). Following a bench trial, defendant was convicted of all nine counts and sentenced to an aggregate term of five years' imprisonment. Defendant timely appeals, arguing that the waiver of his right to counsel was invalid, as Rule 401(a) admonishments had to be given to him when he told the court that he wanted to waive counsel, not just 26 days before he did so. We agree. Thus, we reverse defendant's convictions, vacate defendant's sentences, and remand this case for a new trial.

¶ 2                                    I. BACKGROUND

¶ 3      On August 24, 2021, defendant was charged by complaint with seven offenses. Bond was set and a warrant for defendant's arrest was issued. On October 20, 2021, defendant was charged by indictment with nine offenses (*supra* ¶ 1). Defendant was arrested on December 15, 2021. On that date, defendant was given a copy of the indictment, advised of the charges brought against him, told that he had the right to an attorney, and informed that an attorney could be appointed to represent him if he was indigent. Counsel was appointed, and on January 5, 2022, she filed a demand for a speedy trial. Nothing in the record reflects that the trial court acknowledged this demand. Thereafter, the case was continued several times on the motion of either the State or defendant.

¶ 4      On April 20, 2022, defendant appeared in court via Zoom with his appointed counsel. While the State and defense counsel discussed a discovery issue, defendant interjected, "object[ing] to all the continuances and delays." Defendant asserted that he "would like the right for a speedy trial." Defendant said that he had not "put in for a speedy trial since [he] ha[d] been down here, and [he

had] been asking for it." The court asked defense counsel for her position on the speedy trial request, and counsel stated that she was "not at this time demanding trial," as "[t]here [was] still investigation that [the defense was] working on." Counsel then told defendant that she would speak with him after court. Defendant replied that "[his] thing [was that counsel] ha[d not] spoken[n] to [him] in almost two and a half months." The court interjected, "[Defendant], enough," and asked defense counsel "what date would [she] like." After the next court date was set, the court gave defense counsel a breakout room in which to meet with defendant, advising defendant that he could speak with counsel there. Defendant asserted, "I'm still demanding to put in for a speedy trial." The proceedings ended, and, presumably, defendant met with counsel in the breakout room.

¶ 5    On May 25, 2022, defense counsel advised the trial court that defendant was now "demanding a speedy trial and not agreeing to any further dates or any further continuances." When defendant tried to interject, the court told him to "be quiet." Defendant then commented that defense counsel was "not telling [him] nothing." He asserted that counsel had not "even [told him] that she was going to do this." He said that "[s]he really [did not] communicate with [him] at all." The court set a trial date and another status date, advising defendant that, if he posted bond, he would be tried *in absentia* if he failed to appear for trial. Instead of telling the court whether he understood this admonishment, defendant said that "[he] want[ed] to put in a motion." When the court again asked defendant to confirm whether he understood the admonishment about being tried *in absentia*, defendant indicated that he understood. The State then advised the court that defendant had not been arraigned. The court stated that defendant would be arraigned on the next court date.

¶ 6    On July 6, 2022, defendant appeared again with counsel. The trial court granted the State's motion *in limine* to introduce evidence of one of defendant's prior convictions and his prior acts of violence involving the victim. Defendant was also arraigned on this date. The court told defendant

that, "[i]n Counts 1 and 2 of the Indictment, [he was] charged with the offenses of Aggravated Domestic Battery Strangulation." The court continued, "[t]hose are both Class 2 felonies, potentially punishable between three and seven years in the Illinois Department of Corrections." The court advised defendant that, "because [he was] extended-term eligible, it could be up to 14 years in the Department of Corrections." The court relayed to defendant that, "[i]f [defendant] were to plead guilty or be found guilty," he "would have to serve a mandatory minimum of 60 days in the Kane County Jail with no good time to apply." The court told defendant about the fine that could be imposed and the term of mandatory supervised release (MSR) he would have to serve following any prison sentence. The court asked defendant, "Do you understand those charges and the possible penalties?" Defendant responded, "Yes, Your Honor."

¶ 7 The trial court then told defendant that "Counts 3 and 4 are Aggravated Battery to a Pregnant Person." The court said, "those are Class 3 felonies, punishable by between two and five years in the Department of Corrections." The court continued, "[b]ecause [defendant was] extended-term eligible on those counts as well, it could be up to 10 years in the Department of Corrections." The court advised defendant about the fine that could be imposed and the period of MSR he would have to serve following any prison sentence. The court asked defendant, "Do you understand those two charges and possible penalties?" Defendant said, "Yes, Your Honor."

¶ 8 Next, the trial court advised defendant that "Count 5 is Domestic Battery Causing Bodily Harm, a Class A Misdemeanor"; "Count 6 is Domestic Battery Making Contact of an Insulting and Provoking Nature, a Class A Misdemeanor"; "Count 7 is Violation of Domestic Violence Bail Bond, a Class A Misdemeanor"; "Count 8 is the same charge, a Class A Misdemeanor"; and "Count 9 is Criminal Damage to Property, a Class A Misdemeanor." The court continued, "[e]ach of the Class A Misdemeanors are punishable by up to a year in jail and fines of up to $2500." The court

asked defendant, "Do you understand the possible penalties for each of those charges?" Defendant replied, "Yes, Your Honor."

¶ 9     The trial court then advised defendant that the State had the burden of proving his guilt beyond a reasonable doubt. The court also told defendant that he had the right to (1) a jury or bench trial; (2) confront and cross-examine witnesses called to testify against him; (3) use the court's subpoena power; (4) present evidence in his own defense, should he choose to present any evidence; and (5) remain silent. Moreover, the court admonished defendant that he had "the right to be represented by a lawyer." The court asked defendant, "Do you understand that you have each of these rights?" Defendant responded, "Yes, Your Honor." Defendant pleaded not guilty, and trial was set for July 28, 2022.

¶ 10    On July 28, 2022, defendant waived his right to a jury trial and elected to proceed with a bench trial, which was set for August 1, 2022. The trial court admonished defendant that the State still had the burden of proving his guilt beyond a reasonable doubt. The court explained that, unlike in a jury trial, where the State had the burden of proving a defendant's guilt to a jury, in a bench trial, the State had to convince a judge that the defendant was guilty. Defendant assured the court that he "underst[oo]d the difference."

¶ 11    On August 1, 2022, right before defendant's bench trial, defendant advised the trial court that he wished to proceed *pro se*. Before accepting defendant's waiver of counsel and allowing defendant to proceed *pro se*, the court questioned defendant. Defendant's answers to these questions revealed that defendant was 27 years old; he was not previously "involved in the court system"; "this [was] the first time [he had] ever been to court for anything"; he did not go to school past eleventh grade; he could read and write; and he knew he would be held to the same standard as an attorney if he was allowed to proceed *pro se*. The court explained that, if defendant was

allowed to represent himself, (1) he would have to ask questions in the proper form, and, if his questions were not in the proper form and the State objected, the court would have to sustain the State's objections and, (2) similarly, if the State asked questions that should be objected to and defendant failed to object, the court could not object on defendant's behalf. Defendant advised the court that he "underst[oo]d." Defendant also assured the court that he understood he could not raise a claim of ineffective assistance of counsel on appeal if he was found guilty and that he could not change his mind about proceeding *pro se* in the middle of the trial. On this last point, the court asked defendant if he knew what standby counsel was. Defendant responded that he did and that he "ha[d] been reading about it." The court advised defendant that it was not going to appoint standby counsel.

¶ 12    The trial court asked defendant if he wanted time to prepare for trial, and defendant said he did. The court told defendant that "[a] continuance from this day forward would be on [his] time." The court asked defendant if he understood, and defendant replied, "What you [*sic*] mean [by] being on my time?" The court advised defendant that the "speedy trial demand is gone."

¶ 13    Once the trial court finished its admonishments, it asked defendant if he had any questions. Defendant said that "the whole reason for [him] going *pro se* [was] because [he had] a motion that he wanted to be heard." Defendant continued that he "was told that [he] had to go *pro se* in order to hear the motion." The court explained that defendant's counsel might not have proceeded with the motion because she had a duty not to file frivolous motions. Defendant intimated that he was willing to proceed *pro se* to have his motion heard. Given that, the court asked defendant if "[he was] asking to proceed *pro se*." Defendant replied, "Yes, Your Honor."

¶ 14    The trial court then granted defendant's motion to waive counsel and proceed *pro se*. In doing so, the court found that defendant was competent to represent himself. The court also found

that defendant understood (1) the pros and cons of proceeding *pro se*, (2) that he would be held to the same standard as an attorney, and (3) that the court could not advocate on his behalf. Moreover, the court found that defendant understood that the continuance for him to prepare for trial was on defendant's motion and, thus, would not count toward any speedy trial demand defendant made. Defendant assured the court that he "agree[d] with everything [the court] said." The court then discharged appointed counsel; ordered the State to tender the discovery materials to defendant; and granted defendant a continuance to examine the discovery materials, prepare for trial, and file the motion he wanted to bring. Defendant agreed to a continuance to August 31, 2022.

¶ 15     At no point during the August 1, 2022, proceeding did the trial court admonish defendant about the nature of the charges brought against him, the minimum and maximum sentences he faced if convicted of the charges, his right to be represented by an attorney, or his right to have the court appoint counsel to represent him if he was indigent. See Ill. S. Ct. R. 401(a) (eff. July 1, 1984).

¶ 16     Thereafter, defendant filed his *pro se* "Petition for Discharge of Incarcerated Defendant Based on Statutory Speedy Trial Violation." In this pleading, defendant alleged that he was arrested for aggravated domestic battery on February 15, 2021, and was charged with domestic battery on December 15, 2021.[1] He alleged that he remained in continuous custody since December 15, 2021, and any delays in resolving his case were not attributable to him. He alleged that, because he

---

[1]According to the Department of Correction's website, of which we may take judicial notice (see *People v. Johnson*, 2021 IL 125738, ¶ 54), defendant was taken into the custody of the Department of Corrections on another case (case No. 20-CF-1202) on February 22, 2021. In that case, he was sentenced to five years' imprisonment for unlawful use or possession of a weapon by a felon.

remained in custody for more than 120 days through no fault of his own, his right to a speedy trial was violated and, thus, the trial court must discharge him from custody.

¶ 17     On August 31, 2022, the trial court confirmed with defendant that he was proceeding *pro se* and "wish[ed] to persist in that at this point." Defendant then argued in support of his petition for discharge. The court denied defendant's petition, noting that some of the delays were attributable to defendant, as defense counsel had agreed to or asked for some of the continuances.

¶ 18     The case proceeded with a bench trial. Defendant made no opening statement. The State called five witnesses. Defendant attempted to cross-examine only one witness: a police officer to whom the victim spoke on the day of the incident. Defendant attempted to ask the officer what the victim told the officer. The State objected on hearsay grounds, and the trial court sustained the objection. The State also introduced various exhibits into evidence. Defendant did not object to their admission.

¶ 19     After the State rested, the trial court advised defendant that he could present evidence if he wished, including his own testimony. The court explained how the case would proceed if defendant testified on his own behalf. The court reminded defendant that he did not have the burden of proof in the case, was presumed innocent, and was not required to present evidence. The court told defendant that, if he chose not to testify or present any evidence, the court would not hold that against him. Defendant advised the court that he did not wish to testify or present any evidence. Defendant rested, and the State gave a closing argument. Defendant made no closing statement.

¶ 20     The trial court found defendant guilty on all nine counts. The court then admonished defendant about his right to file a posttrial motion. Defendant told the court that he would like counsel appointed to represent him at sentencing. The court appointed counsel for sentencing, noting that it was not appointing counsel for the filing of any posttrial motion.

¶ 21    Defendant filed a *pro se* posttrial motion, arguing that he was not proved guilty beyond a reasonable doubt, the court erred in allowing the State to introduce evidence of his prior conviction and prior bad acts, and his right to a speedy trial was violated. The trial court denied the motion.

¶ 22   At sentencing, counsel represented defendant. The State introduced evidence of defendant's extensive criminal history. The trial court merged count II into count I, merged the remaining counts into count III, sentenced defendant to five years' imprisonment on count I, and imposed a concurrent term of two years' imprisonment on count III.

¶ 23    This timely appeal followed.

¶ 24                                    II. ANALYSIS

¶ 25    At issue in this appeal is whether defendant's waiver of his right to counsel was valid when the Rule 401(a) admonishments required before a trial court may accept a waiver of counsel were given to defendant 26 days before he expressed a desire to waive counsel and proceed *pro se*.

¶ 26    Before considering this issue, we note that defendant did not object contemporaneously to the lack of Rule 401(a) admonishments or raise the issue in a posttrial motion. Thus, the issue is forfeited. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) ("[B]oth a trial objection and a written post-trial motion raising the issue are necessary to preserve an issue for review.").

¶ 27    Recognizing that the issue is forfeited, defendant asks us to consider the issue under the plain-error rule. See Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). "The plain-error [rule] bypasses forfeiture principles and allows a reviewing court to consider unpreserved error when: (1) the evidence is close, regardless of the seriousness of the error; or (2) the error is serious, regardless of the closeness of the evidence." *People v. Seal*, 2015 IL App (4th) 130775, ¶ 26. Courts have "consistently held the right to counsel is so fundamental that [they] will review as plain error a claim [that] there was no effective waiver of counsel[,] although the issue was not raised in the trial

court." *Id.*; see *People v. Stoops*, 313 Ill. App. 3d 269, 273 (2000). Therefore, we invoke the plain-error rule and consider whether defendant's waiver of counsel was effective given that he had been admonished pursuant to Rule 401(a) 26 days before he expressed a desire to waive counsel.

¶ 28    Both the United States Constitution and the Illinois Constitution guarantee a criminal defendant the right to be represented by counsel during all criminal prosecutions. *People v. Talidis*, 2023 IL App (2d) 220109, ¶ 40; see *People v. Dyas*, 2023 IL App (3d) 220112, ¶ 14 ("A defendant is entitled to the representation of counsel at all critical stages of a criminal proceeding."). "Concomitant with a criminal defendant's right to counsel is the right to proceed *pro se*, though that right is not expressly provided for in either the United States or Illinois Constitutions." *Talidis*, 2023 IL App (2d) 220109, ¶ 40.

¶ 29    There are three ways in which a defendant may relinquish his right to counsel. *Dyas*, 2023 IL App (3d) 220112, ¶ 14. They are "(1) waiver, which is the intentional relinquishment of a known right; (2) forfeiture, which is the failure to make a timely assertion of that right; and (3) waiver by conduct, which combines elements of waiver and forfeiture." *Id.*

¶ 30    Here, defendant expressly, *i.e.*, intentionally, waived his right to counsel. Any "waiver of the constitutional right to counsel must be voluntary, knowing, and intelligent." *Id.* To ensure that the waiver of counsel is made voluntarily, knowingly, and intelligently, the trial court must generally "comply with Rule 401(a) before it can accept [a] waiver of counsel." *Id.* Rule 401(a) provides:

> "(a) *** The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:
>
>> (1) the nature of the charge;

(2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and

(3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court." Ill. S. Ct. R. 401(a) (eff. July 1, 1984).

¶ 31 "Strict compliance [with Rule 401(a)] is not always required." *Dyas*, 2023 IL App (3d) 220112, ¶ 14. Rather, "substantial compliance is sufficient if the record shows (1) the waiver was made knowingly and voluntarily and (2) the admonishment given did not prejudice the defendant's rights." *Id.* "Importantly, 'Rule 401(a) admonishments must be provided *at the time the court learns that a defendant chooses to waive counsel*, so that the defendant can consider the ramifications of such a decision.' " (Emphasis in original.) *Id.* (quoting *People v. Jiles*, 364 Ill. App. 3d 320, 329 (2006)). We review *de novo* whether substantial compliance with Rule 401(a) was had. See *People v. Bahrs*, 2013 IL App (4th) 110903, ¶ 13.

¶ 32 Here, on July 6, 2022, when defendant was arraigned, the trial court substantially admonished defendant pursuant to Rule 401(a). The court advised defendant about the nature of all the charges brought against him, the penalties that could be imposed if he was convicted, and his right to be represented by counsel. See Ill. S. Ct. R. 401(a) (eff. July 1, 1984). Although the court did not tell defendant that he had the right to appointed counsel if he could not afford to obtain counsel on his own, defendant was represented by appointed counsel when these admonishments were given.

¶ 33 If defendant had wished to waive counsel and proceed *pro se* on July 6, 2022, we likely would conclude that substantial compliance with Rule 401(a) was had. The problem in this case is that defendant did not express his desire to waive counsel and proceed *pro se* until August 1, 2022,

which was 26 days later. On that date, when defendant told the court that he wanted to waive counsel and proceed *pro se*, the court extensively examined defendant on his ability to represent himself and admonished defendant about the pitfalls he may confront at trial as a nonattorney. However, although the court ultimately accepted defendant's waiver of counsel, the court never admonished defendant pursuant to Rule 401(a) on that date. This was error. Defendant could not be expected to rely on admonishments given 26 days earlier, at a time when he was not asking to waive counsel and represent himself. See *Dyas*, 2023 IL App (3d) 220112, ¶ 19; *Jiles*, 364 Ill. App. 3d at 329-30; *Stoops*, 313 Ill. App. 3d at 275.

¶ 34    *Dyas* supports our position. There, on each of four separate court dates *before* the defendant expressed a desire to waive counsel and proceed *pro se*, the defendant was admonished about the nature of the charge brought against him and the possible penalties that could be imposed if he was convicted. *Dyas*, 2023 IL App (3d) 220112, ¶ 18. Similarly, on one court date *before* the date the defendant advised the trial court that he wished to waive counsel and represent himself, the defendant was advised that he had the right to appointed counsel. *Id.* However, on the day the defendant expressed his desire to waive counsel and proceed *pro se*, the trial court did not admonish defendant at all pursuant to Rule 401(a). *Id.* ¶ 19. The appellate court determined that it was error for the trial court not to admonish the defendant pursuant to Rule 401(a) on the day the defendant told the trial court that he wanted to waive counsel and proceed *pro se*, because "[i]t is well settled that 'Rule 401(a) admonishments must be provided at the time the court learns that a defendant chooses to waive counsel, so that the defendant can consider the ramifications of such a decision.' " *Id.* (quoting *Jiles*, 364 Ill. App. 3d at 329). In so concluding, the court distinguished those cases where the trial courts admonished the defendants pursuant to Rule 401(a) on the day the defendants chose to waive counsel, but the admonishments given were lacking in some respect. *Id.* The court

determined that those cases were different in that the defendant in *Dyas* was not admonished at all pursuant to Rule 401(a) on the day he chose to waive counsel and proceed *pro se*, whereas the defendants in the other cases were admonished, albeit imperfectly, on the day they decided to waive counsel. *Id.*

¶ 35    Here, we determine that, like the defendant in *Dyas*, defendant's waiver of counsel was invalid because the trial court's Rule 401(a) admonishments came 26 days before defendant expressed his desire to waive counsel and proceed *pro se*. Further, like the court in *Dyas*, we find misguided the State's reliance here on cases where substantial compliance with Rule 401(a) was had because the defendants were given timely, though imperfect, admonishments when they advised the trial courts that they wanted to waive counsel. See, *e.g.*, *People v. Wright*, 2017 IL 119561, ¶¶ 7, 53-54 (incomplete but adequate admonishments given to the defendant on the day the trial court accepted the defendant's waiver of counsel); *People v, Moore*, 2022 IL App (3d) 200262-U, ¶¶ 8, 15-16 (same); *People v. Dunn*, 2021 IL App (2d) 190512-U, ¶¶ 8-10, 51 (same).

¶ 36    The State urges us to follow this court's decision in *People v. Span*, 2021 IL App (2d) 180966. We decline, as *Span* is distinguishable.

¶ 37    In *Span*, at the defendant's first court appearance, the defendant's appointed counsel advised the trial court that the defendant wished to waive counsel and proceed *pro se*. *Id.* ¶ 3. Before accepting the defendant's waiver of counsel, the court advised the defendant that he had the right to appointed counsel. *Id.* ¶ 4. The court also questioned the defendant about his age, education, and familiarity with the legal system, and it warned the defendant about the dangers he may face as a nonattorney proceeding against the State's trained lawyers. *Id.* The defendant told the court that he understood. *Id.* The court accepted the defendant's waiver of counsel, handed the indictment to the defendant, and immediately proceeded with arraignment at the defendant's request. *Id.* ¶ 5. In

arraigning the defendant, the court admonished the defendant pursuant to Rule 401(a), informing the defendant about the nature of the charges brought against him and the penalties that could be imposed if he was convicted. *Id.* The court also continued to caution the defendant about the hazards of representing himself. *Id.* ¶¶ 4-5. At the conclusion of this first court date, the defendant pleaded not guilty, and the trial court continued the case. *Id.* ¶ 5.

¶ 38 Thereafter, a jury found the defendant guilty of unlawful delivery of a controlled substance; the trial court sentenced the defendant; and the defendant appealed, arguing that the court should not have barred him from challenging the legality of his seizure by the police. *Id.* ¶ 6. We affirmed the defendant's conviction and sentence. *Id.* The defendant then petitioned for postconviction relief, ultimately arguing that the trial court violated Rule 401(a) when it accepted the defendant's waiver of counsel before it admonished him about the nature of the charges he faced and that counsel on direct appeal was ineffective for failing to raise this issue on direct appeal. *Id.* ¶ 7. The trial court dismissed the petition, and the defendant appealed. *Id.*

¶ 39 We determined that the defendant's petition was properly dismissed. *Id.* ¶ 22. In doing so, we stated:

> "We find substantial compliance [with Rule 401(a)] in this case where the trial court, *all in the same hearing*, accepted [the] defendant's waiver and advised him of the charges and possible penalties. The record demonstrates that [the] defendant's decision to waive counsel was indeed knowing and voluntary. The trial court ascertained that [the] defendant was 30 years old, had an associate's degree, reported no history of mental health problems, and had some experience with the legal system because he had had a previous criminal case that had gone to trial. Moreover, [the] defendant's reason for wanting to represent himself was that he believed a lawyer had previously taken advantage of his mother. Thus, [the]

defendant's stated reason for choosing self-representation did not depend on the nature of the charge or the possible sentence. [Citation.] *** When the court reiterated that [the] defendant had chosen to represent himself, [the] defendant did not hesitate or change his mind, although he had the opportunity to do so at that point. [The] [d]efendant was able to ask two questions following the arraignment, and neither had to do with self-representation. [The] [d]efendant does not claim that the trial court provided him any incorrect information or that the court's manner of proceeding with the waiver affected his decision. Because the court substantially complied with Rule 401(a), it was reasonable for counsel not to raise the issue on direct appeal." (Emphasis added.) *Id.*

¶ 40    We recognize that this case is like *Span* in many respects. Specifically, before the trial court accepted defendant's waiver of counsel, the court ascertained that defendant was 27 years old, had an eleventh-grade education, and could read and write. Similarly, nothing indicated that defendant had any mental health problems. While defendant denied any experience with the legal system, his extensive criminal history suggested otherwise—although, unlike in *Span*, he might not have had a case go to trial. Defendant's reason for wanting to represent himself did not, like the defendant in *Span*, have anything to do with the charges brought against him, the penalties that could be imposed, or the appointment of counsel. Before defendant argued his speedy trial claim, the trial court confirmed that defendant wished to waive counsel and represent himself, just as the trial court in *Span* confirmed post-waiver that the defendant wished to proceed *pro se*. Also, here, the questions defendant asked following his waiver of counsel, like the questions the defendant in *Span* posed following his arraignment, had nothing to do with self-representation. Lastly, like the defendant in *Span*, defendant does not argue that the trial court gave him any incorrect information or that the court's manner of proceeding with his waiver affected his decision to waive counsel.

¶ 41   Although there are many similarities between this case and *Span*, one difference is paramount and makes *Span* inapplicable. Here, unlike in *Span*, defendant was *not* admonished pursuant to Rule 401(a) "*at the same hearing*" where he expressed his desire to waive counsel and proceed *pro se*. (Emphasis added.) See *id.* ¶ 16. Rather, as noted, defendant was admonished pursuant to Rule 401(a) 26 days before he told the trial court that he wanted to waive counsel. Because defendant, unlike the defendant in *Span*, was not given Rule 401(a) admonishments at the same hearing where he advised the court he wanted to waive counsel, we find *Span* unpersuasive here.

¶ 42   In reaching our conclusion, we observe that, in *Span*, we not only determined that the defendant was admonished in substantial compliance with Rule 401(a), but we also proceeded to hold that his waiver of counsel was voluntary, knowing, and intelligent. *Id.* ¶ 22. As part of the latter inquiry, we considered the defendant's ability to represent himself. *Id.* Here, because defendant was not substantially admonished pursuant to Rule 401(a), as those admonishments were given to him 26 days before he waived counsel, any facts suggesting that defendant could represent himself are irrelevant. That is, although Rule 401(a) creates the groundwork for a voluntary, knowing, and intelligent waiver, whether the admonishments were timely given—which is what is at issue here—is a separate inquiry from whether a defendant's waiver of counsel after substantially compliant Rule 401(a) admonishments was voluntary, knowing, and intelligent. See *id.* (after determining that substantial compliance with Rule 401(a) was had, we considered the defendant's characteristics and circumstances in determining that "[the] defendant's decision to waive counsel was indeed knowing and voluntary").

¶ 43   Further, we stress that with our opinion here we are not holding that Rule 401(a) admonishments must be given on the same day the trial court accepts a waiver of counsel. Rather,

Rule 401(a) and the cases interpreting it require only that the admonishments be given when the trial court learns that the defendant wishes to waive counsel. See *People v. Haynes*, 174 Ill. 2d 204, 241 (1996) (rejecting the argument that the trial court had to "give the defendant the required admonishments at the time [it] accepted the waiver" and determining that the court's Rule 401(a) admonishments were sufficient because, although they were "given a number of weeks prior to the defendant's waiver [of counsel], [they] were given at a time when the defendant had indicated a desire to waive counsel"); *Moore*, 2022 IL App (3d) 200262-U, ¶ 14 ("A court's failure to provide Rule 401(a) admonishments immediately before a defendant's waiver of his right to counsel does not render the defendant's waiver invalid." (citing *Haynes*, 174 Ill. 2d at 242)). Here, because the trial court admonished defendant pursuant to Rule 401(a) 26 days before it learned that defendant wanted to waive counsel, those admonishments were ineffective, even though the court admonished defendant extensively about other matters outside of Rule 401(a) that may have caused defendant's waiver of counsel to be more informed.[2]

---

[2]We would remind the State of American Bar Association standard 3-1.5, "Preserving the Record"**:**

> "At every stage of representation, the prosecutor should take steps necessary to make a clear and complete record for potential review. Such steps may include: filing motions[,] including motions for reconsideration, and exhibits; making objections and placing explanations on the record; requesting evidentiary hearings; requesting or objecting to jury instructions; and making offers of proof and proffers of excluded evidence." ABA Standards for Criminal Justice, Preserving the Record, Standard 3-1.5 (4th ed. 2017).

An objection regarding the lack of a proper admonishment might have resolved the issue

¶ 44                                    III. CONCLUSION

¶ 45    For the reasons stated, we reverse the judgment of the circuit court of Kane County, vacate

defendant's sentence, and remand this cause for a new trial.

¶ 46    Reversed in part and vacated in part; cause remanded.

---

and saved substantial time and effort.

***People v. Anderson*, 2023 IL App (2d) 230077**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 21-CF-1484; the Hon. David P. Kliment, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and Anne C. Fung, of State Appellate Defender's Office, of Elgin, for appellant. |
| **Attorneys for Appellee:** | Jamie L. Mosser, State's Attorney, of St. Charles (Patrick Delfino, Edward R. Psenicka, and Jaylaan Slaughter, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |